# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1863.

---

### KEANE *v.* CANNOVAN *et al.*

WHERE the plaintiff in ejectment relies upon prior possession as evidence of title, a deed of the premises to him from one not shown to have had at the date of its execution either title or possession is admissible evidence, in connection with proof of entry and occupation under it, to show the extent and boundaries of the premises of which possession was claimed.

The statute which makes a tax deed *prima facie* evidence of the transfer of the title of the delinquent, applies only to deeds executed upon a sale for taxes levied subsequent to its passage. A tax deed executed previous to the passage of the statute, is not admissible as evidence of title without proof that all the requirements of the law authorizing its execution had been complied with.

Where an officer, in making a sale of property, acts under a naked statutory power with a view to divest, upon certain contingencies, the title of the citizen, the purchaser relying upon the execution of the power must show that every preliminary step prescribed by the law has been followed. No presumption is in such case to be indulged that the officer has performed his duty, or complied with the law.

The rule by which a presumption of compliance with legal formalities in a sale by officers, or trustees, is sometimes raised by lapse of time with possession in the purchaser, only authorizes the presumption as to intermediate steps in the proceeding. That which is the foundation of the authority to sell, as

Keane *v.* Cannovan.

well as the execution of the deed by which the sale is consummated, is not within the rule, and must in all cases be proved.

Thus, if from lapse of time since the execution of a tax deed and possession by the purchaser under it, presumptions could be indulged in support of *any* of the preliminary acts essential to the exercise of the power of sale, they could only be in favor of the acts between the assessment and the execution of the deed, and not of the assessment itself, which was the foundation of all subsequent proceedings.

Where in an action of ejectment the defendant claimed title under a tax sale, and to prove an admission of title in him by plaintiff, offered in evidence a complaint in an action by the plaintiff against a third person, in which it was averred that in consequence of the neglect of the plaintiff's agent the premises were sold for taxes and no redemption was made, and that the sale thereby became absolute, in consequence of which neglect of the agent the plaintiff had sustained damage: *Held,* that the complaint was inadmissible for that purpose; that the statements in it did not amount to an admission of title, and that even if they did the admission would not operate to transfer such title.

The description of property in a tax deed must be certain of itself, and not such as to require evidence *aliunde* to make it certain.

A tax deed in which the property is described as follows: "A lot on Dupont Street, one hundred and thirty-seven feet and six inches from the north-west corner of Washington Street, with the improvements thereon 12x100," is void for uncertainty of the description.

The payment of taxes by the grantee in a tax deed upon the property for a portion of the time he is in possession, claiming title under the deed, is not by itself, disconnected from other circumstances, evidence that the owner has abandoned the property.

An abandonment may in some cases be inferred from the lapse of time and the delay of the first occupant in asserting his claim to the possession against parties subsequently entering upon the premises, but in such cases the leaving of the premises must have been voluntary, and without any expressed intention to resume the possession.

The fact that a party, when ceasing to occupy premises, left an agent in charge of them, is of itself sufficient to rebut the presumption of abandonment arising from the cessation of his occupancy, and to render the question of abandonment one of intention proper for determination by a jury from the circumstances.

A defendant in ejectment for a lot in San Francisco, who had possession of the premises on the first day of January, 1855, and thence up to the introduction of the Van Ness Ordinance, cannot invoke the protection of that ordinance when the issue in the action is whether his possession was acquired by an intrusion upon the prior rights of the plaintiff.

The possession of real property is evidence of seizin in fee in the possessor, and no further or higher evidence of title is required to enable a party claiming through the possessor to recover in ejectment until the defendant shows an anterior possession, or traces title from a paramount source.

A tenant in possession of premises, who is sued in ejectment, is not released from liability to the plaintiff for the use of the premises from the fact that he has paid rent to his landlord. If compelled to pay any further sum by the action, he can have recourse upon his landlord for the same.

APPEAL from the Twelfth Judicial District.

This was an action of ejectment to recover a lot of land situated within the City and County of San Francisco. The complaint was filed April 10th, 1860. On the trial the plaintiff introduced and gave in evidence the following instruments.

1. A power of attorney from J. B. Bayerque to Francois L. A. Pioche, dated August 20th, 1859, authorizing and empowering the said attorney to sell and convey the premises in controversy.

2. The deed of the premises from J. B. Bayerque, by Pioche his attorney, to the plaintiff, acknowledged and recorded March 23d, 1860.

3. The judgment and decree of the District Court, entered on February 11th, 1857, in an action wherein J. B. Bayerque was plaintiff, and Sothereo Driard and Jean Branger and others were defendants, which action was brought to foreclose a mortgage executed by the defendants Driard and Branger, covering the premises in controversy, and by which judgment and decree the premises were ordered to be sold to satisfy the amount found due to the plaintiff in said action, the holder of the mortgage, which amount exceeded $4,000.

4. An order, dated February 18th, 1857, issued upon said judgment and decree out of the said Court under the seal thereof, directed to the Sheriff of the City and County of San Francisco, directing a sale of said premises.

5. The certificate and return of the said Sheriff upon said order, showing a sale of said premises on the twelfth of March, 1857, and the purchase of the same at said sale by the said J. B. Bayerque.

6. A deed embracing the premises in controversy executed by the Sheriff to the said Bayerque, bearing date Sept. 14th, 1857.

7. A deed embracing the premises in controversy executed and delivered by Francois Mondolet to the said Driard and Branger,

dated March 3d, 1853, and which was duly acknowledged and recorded on the same day.

8. A deed from Philip Ramirez to Francois Mondolet covering the premises, bearing date April 3d, 1851, and recorded January 24th, 1852.

The plaintiff then proved that Mondolet was in the possession of the premises in the latter part of 1850 and the first part of 1851; that he had a two story frame building on the premises in which he kept a restaurant, which was carried on by himself; 'that he occupied the premises up to June, 1851, when the building was burned down; that the defendants were in possession of the premises at the commencement of the action, and that the value of their use and occupation since then was fifty dollars per month.

On the part of the defendants it was proved that Dumartheray, one of them, went into the possession of the premises in the summer of 1852, and that he and parties claiming under him have continued in the possession ever since. After producing the tax deed of 1851, mentioned by the Court in its opinion, the defendants offered to prove the payment of taxes on the lot by Dumartheray since 1852, except for the years 1857 and 1858, as evidence of his claim as owner of the premises, and to show an abandonment of them by Mondolet. Upon objection of the plaintiff, the proof offered was excluded and the defendants excepted. The defendants also offered to prove the value of the improvements upon the premises, but upon objection of the plaintiff the proof was excluded on the ground that there was nothing in the pleadings to authorize its introduction. The answer did not make any reference to the existence of any improvements upon the premises.

The Court charged the jury as follows: " That the question before them was one of prior possession, as neither party showed any documentary title from the city; that if they find that Mondolet was in possession prior to the defendants' possession, it was sufficient to maintain the action unless that possession was abandoned; that the question of abandonment was one of intention of which they were to judge exclusively; that in order to do so, they must take into consideration all the facts and circumstances before them in evidence; that the Van Ness Ordinance had no application at

this time to determine the cause in favor of either party in this suit."

The plaintiff obtained a verdict. A motion for a new trial was made on various grounds, and among others for alleged insufficiency of the evidence to justify the verdict, and was overruled. All other material facts appear in the opinion of the Court. The defendants appeal.

*Earl Bartlett*, for Appellant.

I. The Court erred in allowing the deed from Ramirez to Mondolet to be read in evidence when no title was shown in the former. (*Innes* v. *Steamer Senator*, 1 Cal. 462 ; *Mateer* v. *Brown*, Id. 224.)

II. The Court erred in refusing to allow the tax deed of Buckingham, the Treasurer of the County of San Francisco, to Dumartheray, and the complaint in the case of *Mondolet* v. *Dufan*, to be read in evidence.

1. These papers showed the title had passed to the defendant by virtue of the tax deed. (*Jackson* v. *Philips*, 9 Cow. 110 ; *Hartwell* v. *Root*, 19 John. 345 ; *Sternberg* v. *Heoffer*, 11 Id. 513.)

2. Said deed being ten years old, the correctness of all proceedings in the assessment and sale of the lot, coupled with defendants' possession, were to be presumed. (Matthew's Presumptive Evidence, 271–277 ; *Johnson* v. *Emerson*, 4 Pick. 160 ; *Thomas' Lessee* v. *Horlacker*, 1 Dal. 14 ; *Green* v. *Covillaud*, 10 Cal. 331 ; *Brown* v. *Covillaud*, 6 Id. 571.)

3. Said deed, together with said complaint offered, constituted an admission of title in the defendant Dumartheray. (*Hurtler* v. *Hays*, 3 Cal. 306 ; *Tartar* v. *Hall*, Id. 266 ; *Parke* v. *Kilham*, 8 Id. 79 ; *Burnett* v. *Dickinson*, Id. 115 ; *Mitchell* v. *Reed*, 9 Id. 205 ; *McGee* v. *Stone*, Id. 606 ; *Snodgrass* v. *Ricketts*, 13 Id. 662.)

4. Said deed and complaint constituted a color of title in Dumartheray, and were evidence to show that Dumartheray entered and claimed as owner and therefore good against a mere prior possessor. (*Livingston* v. *Peru Iron Co.*, 9 Wend. 511; 8 Cow. 589; 13 John. 120 ; 9 Id. 180 ; 2 Caines, 183 ; 5 Serg. & R. 354 ; 2

Keane v. Cannovan.

Mason, 536; *Gregory* v. *Haynes*, 13 Cal. 595; *Hubbard* v. *Sullivan*, 18 Id. 508.)

III.   The Court erred in refusing to allow the defendants to prove the payment of taxes as evidence of ownership, or of abandonment by Mondolet, also the value of the improvements.   (*Ford* v. *Holton*, 5 Cal. 21; *Welch* v. *Sullivan*, 8 Id. 202, 511.)

IV.   The Court erred in refusing to allow the tax deed by Patch, Tax Collector, to be read in evidence, on account of the insufficiency in the description of the premises recited in the deed.   (1 Selden, N. Y. 236; *Dana* v. *Fiedler*, 2 Kern. 40; *Sharp* v. *Spier*, 4 Hill, 76; *Talman* v. *White*, 2 Coms. 66; 13 How. 18; *Kelsey* v. *Abbott*, 13 Cal. 609; *Lackman* v. *Clark*, 14 Id. 131; *Patch* v. *Moore*, 12 Id. 265.)   The defendants had the right to show by parol the meaning of the figures " 12x100 " in the description in the tax deed.   (Story on Cont. 677; 10 Texas, 546; 13 B. Monroe, Ky. 477; 16 Missouri, 210; 13 Ill. 708; 2 Kern. 40; 4 E. D. Smith, N. Y. 215.)

V.   The Court erred in charging the jury that the question of abandonment was a question of intention in this case, and exclusively a question of fact, and that the Van Ness Ordinance had no operation in favor of the defendants to the action.   (*Davis* v. *Butler*, 6 Cal. 510; 1 Watts, 46; 5 Id. 13, 173, 284, 359; 1 Serg. 120; *Whitney* v. *Wright*, 15 Wend. 171; 10 Cal. 331; *Wolf* v. *Baldwin*, 19 Id. 306.)

VI.   The Court erred in refusing a new trial for the insufficiency of the evidence to justify the verdict.

*H. S. Love*, for Respondent.

I.   It was clearly proper for the Court not only to allow the plaintiff to prove that Mondolet was in possesssion, but that he entered under color of title, and while so being in possession he claimed under color of title.

II.   There was no error in refusing to allow the tax deed from Buckingham to Dumartheray to be read in evidence.   The statute of 1857 has no application to the Buckingham deed given in 1851. (*Beekman* v. *Bingham*, 1 Seld. 366; *Stryker* v. *Kelley*, 2 Denio, 323; *Varick* v. *Tallman*, 2 Barb. 113.)   As no title passed by

the deed, no presumptions will be indulged in by reason of the deed "being ten years old." The complaint in the case of *Mondolet* v. *Dufan* was inadmissible for any purpose, and was clearly inadmissible as constituting an admission of title in the defendant Dumartheray.

III. There was no error in the Court refusing to allow the defendants to prove the payment of taxes by Dumartheray for a portion of the time in which he had been in possession. Dumartheray could acquire no title by so doing. In equity he was bound to pay them, and the payments are to be regarded as advancements for the benefit of the owner. (*Kelley* v. *Abbott*, 13 Cal. 619.)

IV. The Court properly refused to allow the defendants to prove the value of their improvements by way of "set-off," no improvements having been pleaded.

V. There was no error in the Court refusing to allow the tax deed from Patch, Collector, to be read in evidence. (*Sharp* v. *Spier*, 4 Hill, 76, 90, 91; *Sharp* v. *Johnson*, Id. 102, 103; 2 Comst. 170–172; 2 Barb. 344; 4 Denio, 237; Blackwell, 151–154, 330; Id. 450, sec. 16; 4 Hill, 76–91, *et seq.; 8 Cal. 344; *Tallman* v. *White*, 2 Comst. 66; *Lessee of Perkins* v. *Dibble*, 10 Ohio, 433; *Burchard* v. *Hubbard et al.*, 11 Id. 316.)

VI. The recitals of the deed from Patch, Tax Collector, were insufficient for any purpose. (1 McLean, 321; Gould's Pl. 189, sec. 29, 3d ed.; 1 Comst. 79; 13 Cal. 609; *Loher* v. *Latham*, 15 Id. 418–420.)

VII. The tax deed from Patch, the Collector, was not *prima facie* evidence of the facts therein contained. (*Ferris* v. *Coover*, 10 Cal. 589, 632, 633; *Kelsey* v. *Abbott*, 13 Id. 609, 619; *Lackman* v. *Clark*, 14 Id. 131; 2 Comst. 66; 2 Denio, 323; 1 Seld. 366; 2 Barb. 113.)

VIII. There was no error in the Court refusing to allow the defendants to show by parol testimony the meaning of the figures 12x100. (Blackwell, 152–154 note.)

IX. The Court committed no error in submitting the question of abandonment to the jury, and in charging the jury that the Van Ness Ordinance had nothing to do with this case. (10 Cal. 589; Act of Assembly of Penn., passed Dec. 30th, 1786; 1 Watts,

20

46–49, 52; 1 Serg. & R. 120; 5 Serg. & Watts, 284–301; 4 Yeates, 534; *Whitney* v. *Wright*, 15 Wend. 171; 8 Cal. 144, affirmed in Id. 223; 9 Id. 5; 10 Id. 183, and cases there cited by respondent's counsel; Laws of 1858, 54, sec. 9.)

X.   Dumartheray could acquire no title under the tax deed from Patch to Bartlett, his grantor.   (Blackwell, 460–471; 10 Cal. 609; 22 Maine, 371; 12 Ill. 442.)

XI.   The tax deed from Buckingham to Dumartheray being nine years old, is not to be regarded as an ancient deed, and nothing will be presumed in relation to it.   (6 Wheat. 119; Blackwell, 48, 88, 89, 604; *Allen* v. *Smith*, 1 Leigh, 231; 4 Hill, 86; 4 Wheat. 77, *et seq.*; *Thatcher* v. *Powell*, 6 Id. 119; Blackwell, 619; *Ex parte Newman*, 9 Cal. 526.)

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

This is an action for the possession of certain real estate situated within the city of San Francisco.   The plaintiff bases his right to recover upon title as evidenced by the possession in 1850 and 1851 of one Mondolet, through whom he claims.   The defendants rely upon two tax deeds, one executed by the Treasurer of the county of San Francisco in March, 1851, and the other executed by the Tax Collector of the City and County of San Francisco in June, 1858, and upon an alleged abandonment of the premises by Mondolet, and the operation of the Van Ness Ordinance.   On the trial the plaintiff produced and gave in evidence, against the objection of the defendants, a conveyance of the premises from one Ramirez to Mondolet, executed in April, 1851, and then proved that Mondolet was in the possession of the premises in 1850 and occupied them until June, 1851; that during this period there was a two-story building thereon, which Mondolet used as a restaurant until it was destroyed by fire; and that the defendants were in the possession at the commencement of the action.   The plaintiff also gave proof of the value of the use and occupation.

The tax deeds offered by the defendants, and the evidence in connection with them, were excluded upon the objection of the plaintiff. Proof of the payment of taxes, as evidence of ownership by the

defendants and of abandonment by Mondolet, was rejected; and the alleged abandonment was submitted upon other proof as a question of fact to the jury. The Court refused to admit evidence of the value of the improvements as a set-off to the damages claimed, and held that the Van Ness Ordinance had no operation in favor of the defendants. The jury found for the plaintiff and assessed his damages at three hundred dollars, and judgment was entered upon the verdict.

Various errors are assigned for a reversal of the judgment. These arise upon the ruling of the Court below in admitting the conveyance from Ramirez to Mondolet; in excluding the tax deeds and evidence offered in connection with them; in rejecting proof of the payment of taxes and the value of the improvements; and upon the instructions to the jury on the question of abandonment and the operation of the Van Ness Ordinance; and upon the refusal of a new trial for the alleged insufficiency of the evidence to justify the verdict.

1. The conveyance from Ramirez to Mondolet was admissible, as showing the extent and boundaries of the premises of which Mondolet claimed possession. If Ramirez had no title, of course no title passed by his conveyance, and the defendants were not prejudiced by its introduction in evidence.

2. The tax deed of the County Treasurer, executed in March, 1851, was inadmissible without preliminary proof that all the requirements of the law authorizing its execution had been complied with. The statute which makes a tax deed *prima facie* evidence of the transfer of the title of the delinquent had not then been passed. That statute only applies to deeds executed upon a sale for taxes subsequently levied. Nor was any presumption to be indulged that the Treasurer, and the officers whose acts preceded his, had complied with the law. It was not a case in which presumptions could be indulged that the officers had done their duty. They acted under a naked statutory power, with a.view to divest, upon certain contingencies, the title of the citizen, and in all such cases the purchaser relying upon the execution of the power must show that every preliminary step prescribed by the law has been followed. (*Williams* v. *Peyton's Lessee,* 4 Wheat. 78; *Varick* v.

*Tallman*, 3 Barb. 113.)    Nor was any presumption to be indulged that *all* the preliminary steps had been followed from the length of time the deed had been executed and the grantee had been in the possession of the premises.    There are many transactions of which it is impossible or extremely difficult, after the lapse of little time, to produce the proper evidence, and in favor of the regularity of which presumptions are in consequence made by the law.    " Thus," says Greenleaf, " where an authority is given by law to executors, administrators, guardians, or other officers, to make sales of lands upon being duly licensed by the Courts, and they are required to advertise the sales in a particular manner, and to observe other formalities in their proceedings, the lapse of sufficient time (which in most cases is fixed at thirty years) raises a conclusive presumption that all the legal formalities of the sale were observed.    The license to sell, as well as the official character of the party, being provable by record or judicial registration, must in general be so proved, and the deed is also to be proved in the usual manner ; it is only the intermediate proceedings that are presumed.    *Probatis extremis præsumuntur media.*    The reason of this rule is found in the great probability that the necessary intermediate proceedings were all regularly had, resulting from the lapse of so long a period of time, and the acquiescence of the parties adversely interested, and in the great uncertainty of titles, as well as the other public mischiefs, which would result if strict proof were required of facts so transitory in their nature, and the evidence of which is so seldom preserved with care.    Hence, it does not extend to records and public documents, which are supposed always to remain in the custody of the officers charged with their preservation, and which, therefore, must be proved, or their loss accounted for and supplied by secondary evidence."    (Evidence, vol. 1, sec. 20.)    If, in accordance with the reasons thus stated by Greenleaf, presumptions could be indulged in support of *any* of the preliminary acts essential to the exercise of the power of sale by the County Treasurer in the present case, they could only be indulged in favor of the acts between the assessment and the execution of the tax deed ; none could be indulged in favor of the assessment itself, which was the foundation of all subsequent proceedings.    The assessment consist-

ing in the listing and valuation of the property for the purpose of taxation, was also matter of record kept by the Assessor, and delivered by him to the Auditor of the county. From it, after it had been corrected by the Board of Equalization of the county, the duplicate was prepared upon which the Treasurer proceeded to demand the tax and sell the property. This record of the assessment was not produced, nor was any evidence offered of the assessment, or of any of the acts made by the statute essential prerequisites to the sale. The validity of the deed of the Treasurer was rested upon presumptions in favor of the acts of public officers, and the lapse of time since it was executed and the grantee has been in possession of the premises.

In connection with this tax deed, the defendants offered the complaint of Mondolet in an action brought by him against one Dufan, as constituting an admission of title in the defendant Dumartheray. It was rejected as evidence for the purpose stated, but was subsequently admitted as evidence of abandonment. The action was brought to recover damages from Dufan, who was Mondolet's agent, for having allowed the premises to be sold for taxes. In the complaint the plaintiff alleges, that in consequence of the neglect of his agent the premises were sold and redemption was not made, and that the sale thereby became absolute, and that he had in consequence sustained damages to the amount of $1,500. These statements do not amount to an admission of title in the purchaser at the tax sale, and even if they did, the admission would not operate to transfer such title. They only show that Mondolet believed that he had suffered to a certain amount from the neglience of his agent.

The tax deed from the Collector of the City and County of San Francisco, executed in June, 1858, was properly excluded for uncertainty in the description by which the property was assessed and sold, as set forth in the deed itself. The description is as follows: "A lot on Dupont Street, one hundred and thirty-seven feet and six inches from the north-west corner of Washington Street, with the improvements thereon — 12 x 100." This description does not state where Dupont or Washington Streets are situated— whether in or out of the city of San Francisco. But assuming that streets by these names exist in the city of San Francisco, it does

Keane v. Cannovan.

not appear in which direction from the north-west corner of Washington Street the lot assessed is distant one hundred and thirty-seven feet and six inches. Nor does the description give the dimensions or form of the lot, or show in what direction its lines run, after the distance from Washington Street is reached. The figures " 12 x 100 " in the deed are as unintelligible as so many hieroglyphics, whatever technical meaning may be attached to them by the custom of auctioneers, assessors, and property holders in the city of San Francisco. In advertising the property for sale the Collector follows the description in its assessment, and the Assessor is expected to give and should give the description in ordinary language, and not by signs in use by a particular class in a particular locality. The figures may apply to different standards of measurement—to inches, feet, or varas—and by all these standards the dimensions of property are given in conveyances in San Francisco. It is not sufficient that a similar description, in a contract or conveyance between individuals, might be shown by parol evidence to have been intended for particular premises. The description must be certain of itself, and not such as to require evidence *aliunde* to render it certain. The statute requires the Collector in his publication of the delinquent list to give " such a condensed description of the property that it *may be easily known*." (Revenue Act of 1857, sec. 15.) A description which cannot be made intelligible without resort to extrinsic evidence is not one of this character. Certainty in the description is required to apprise the owner that his property is advertised for sale, and to enable him to prevent the sale by the payment of the taxes thereon, and to impart information to bidders of the actual extent and location of the premises to be sold. All subsequent proceedings depend upon this certainty. An inaccurate or an uncertain description defeats every step subsequently taken, and, as we have already said, the uncertainty cannot be cured by evidence *aliunde*. "A description," says Blackwell, " sufficiently clear to convey land between man and man and which, if contained in an agreement to convey, would authorize a Court of Equity to decree a specific execution, will not answer in the proceedings to enforce the collection of a tax. In the case of private transactions, the Courts in construing the docu-

ments endeavor to collect the intention of the parties, and give that intention effect.   If a latent ambiguity exists in the description, parol evidence is resorted to for the purpose of explaining it and giving to the intention of the parties complete operation ; and when the estate intended to be conveyed is sufficiently described in the deed or other writing the addition of a circumstance, false or mistaken, will be rejected as surplusage, in order to carry the intention into effect.   But in these tax proceedings the owner of the estate has nothing to do—he intends nothing ; the Government is acting through its agents in hostility to him and with a view of enforcing the collection of a tax from him."   (Treatise on Tax Titles, 152 ; *Tallman* v. *White*, 2 Coms. 70 ; *Dike* v. *Lewis*, 4 Denio, 238.)

3. The proof as to the payment of taxes was properly excluded. Title to another man's property cannot be acquired by the payment of the taxes thereon.   And the payment of the taxes by the occupant in the present case for a portion of the time he was in possession was not of itself, disconnected from other circumstances, evidence that the owner had abandoned the property.

The value of the improvements could not be set off against the damages claimed, as no foundation was laid in the allegations of the answer for any proof on the subject.

4. The charge to the jury on the subject of abandonment was correct.   The charge was, that the question of abandonment was one of intention, of which the jury was to judge exclusively, and that in order to do so they must take into consideration all the facts and circumstances before them.   The question was correctly stated ; it was plainly one of intention to be gathered from the facts. There was little evidence on the subject—none from which the Court would have been warranted in taking it from the jury. There are cases, undoubtedly, in which an abandonment may be inferred from the lapse of time and the delay of the first occupant in asserting his claim to the possession against parties subsequently entering upon the premises.   But in such cases the leaving of the premises must have been voluntary, and without any expressed intention to resume the possession.   In the case at bar it appears that when Mondolet ceased to occupy in person the premises he left an agent in charge of them.   This circumstance is of itself

sufficient to rebut the presumption of abandonment arising from the fact that he ceased to occupy them, and to render the question, whether in fact he did or did not abandon them, one for the consideration of the jury.

There was no error in the charge of the Court that the Van Ness Ordinance had no operation in favor of the defendants. By that ordinance the city relinquished and granted all her title and claim to her lands, with certain exceptions, to the parties in the actual possession thereof, by themselves or tenants, on or before the first of January, 1855, provided such possession was continued up to the introduction of the ordinance in the Common Council; or if interrupted by an intruder or trespasser, had been or might be recovered by legal process. The defendant Dumartheray was in the actual possession of the premises in controversy at those periods, but it was a possession acquired by intrusion upon the prior rights of Mondolet. In determining the question whether or not there had been such intrusion, Dumartheray, and those claiming under him, could not invoke the protection of the ordinance.

5. Some doubt is thrown upon the evidence of the witness for the plaintiff, from the contradiction between his testimony and statements in the complaint filed by Mondolet against Dufan. Still the plaintiff's case would not be materially changed if we suppose the personal occupation of the premises by Mondolet ceased in September, 1850, and that the subsequent occupation until the fire in June, 1851, was by his agent. The question of the prior possession of Mondolet was distinctly left to the jury, and there is not sufficient in the doubts created as to the statements of the witness to justify any interference with their action. A verdict is not to be disturbed where the evidence is merely conflicting. The jury having the witnesses before them are the most competent judges of the weight to be attached to their testimony; and it is not sufficient that an appellate Court, looking at the testimony as it is written down, would have come to a different conclusion.

Judgment affirmed.

The appellants applied for a rehearing on the grounds:

1st. That the Court had not in its opinion passed upon the ques-

tion whether the tax deed, under which Dumartheray entered and which was found invalid, was or was not sufficient to constitute a color of title, and therefore a good defense to prior possession.

2d. That as against the defendant Cannovan the judgment should be modified, so that no damages for the value of the use and occupation should be recoverable against him, as it appeared from the record that he was a tenant of Dumartheray and paid rent to him.

FIELD, C. J. delivered the opinion of the Court on the petition—COPE, J. concurring.

The possession of Mondolet was evidence of seizin in fee in him, and no further or higher evidence of title was required to enable the plaintiff, claiming through him, to recover, until the defendant had shown an anterior possession or had traced title from a paramount source. (*Day* v. *Alverson*, 9 Wend. 223; *Hill* v. *Draper*, 10 Barb. 458.) It is immaterial in this view whether we consider the tax deed to Dumartheray sufficient to constitute color of title or otherwise.

The fact that Cannovan was a mere tenant of Dumartheray, and had paid rent for the premises, does not release him from liability to the plaintiff. The action of ejectment lies only against the occupant of the premises, and to him the plaintiff must look for compensation for their use. If Cannovan has already paid the rent, he can have recourse upon his landlord for any further sum he may be compelled to pay by the present action.

Rehearing denied.